<b>IN THE UNITED STATES DISTRICT COURT<br>FOR THE DISTRICT OF CLUMBIA</b>

Nancy Nelson
5758 MacArthur Blvd., N.W.,
Washington, D.C.  20016
    Plaintiff

v.                                                         Civil Action No. 1:06-cv-01600-CKK

iMapData Inc.
1410 Spring Hill Road
Suite 300
McLean, VA 22102
    Defendant

<b>AMENDED COMPLAINT</b>

Plaintiff Nancy Nelson hereby sues iMapData Inc. for breach of contract, fraud, negligent misrepresentation, and unjust enrichment.  Ms. Nelson was a sales employee employed by iMapData.  She was entitled to a sales commission of $161,550, but iMapData arbitrarily paid her only $72,697.50.  The failure to pay Ms. Nelson her commission forced her to terminate her employment.  Because she was no longer employed, iMapData denied her additional commissions that she otherwise had earned from sales already made.  As a result, Ms. Nelson was injured, and iMapData was unjustly enriched.

<b>Parties</b>

1.  Plaintiff Nancy Nelson is a citizen of the District of Columbia, residing at 5758 MacArthur Blvd., N.W., Washington, D.C.  20016.

2.   iMapData Inc. is a corporation, incorporated in the state of Delaware with its principal place of business in Virginia.

**Jurisdiction and Venue**

3. Jurisdiction is founded on 28 U.S.C. §1332. Plaintiff is a citizen of the District of Columbia; defendant is a citizen of Delaware and Virginia. The matter in controversy exceeds $75,000 exclusive of interest and costs.

4. Venue is founded on 28 U.S.C. §1391(a).

5. iMapData regularly does business in the District of Columbia, and has an office located at 1615 L Street in Northwest Washington.

**Facts Relating to All Counts**

6. Ms. Nelson was employed by iMapData Inc., a subsidiary of ChoicePoint, in early 2004. She remained an employee of iMapData during the period relevant to the allegations in this complaint.

7. Ms. Nelson was a senior director in sales. She worked out of her home on MacArthur Blvd. in Washington, D.C.

8. On or about March 1, 2006, she was presented with a Sales Incentive Plan that set forth the terms of commissions to be earned in 2006. The plan provided a formula by which a sales representative would be paid a commission calculated as a percentage of the revenue generated by her sales and credited to her. The plan provided that although "revenue credit" for a sale was normally allocated to a single sales representative, the administrators of the plan retained the discretion to determine that a sale resulted from a collaborative effort, and allocate the revenue credit among two or more people in two or more business units (i.e., the Limitations and Adjustments Provision). No other provision in the

Sales Incentive Plan permits iMapData to split revenue credit or commissions among multiple employees.

9.  At the time Ms. Nelson was presented with the 2006 Sales Incentive Plan, she was in the process of negotiating a substantial contract with the Department of Homeland Security.

10.  Prior to accepting the Sales Incentive Plan, Ms. Nelson asked James Webster, her sales manager, "will any of the deals in my current pipeline be affected by this clause (i.e., the Limitations and Adjustments Provision)?"

11.  Mr. Webster represented to Ms. Nelson both orally and in writing that no deals in her pipeline would be subject to that contract provision.

12.  Ms. Nelson relied on Mr. Webster's representations.  She accepted the Sales Incentive Plan.

13.  Pursuant to the Sales Incentive Plan, Ms. Nelson was entitled to a commission of $161,550 in the first quarter of 2006 from the DHS sale.

14.  Contrary to the representations made to Ms. Nelson, iMapData arbitrarily paid her only 45% of the commission due ($72,697.50).  The balance of her commission ($88,852.50) was paid to other employees.  Those employees were in the same business unit as Ms. Nelson, and they had not received any revenue credit for the sale, and thus were not qualified under the Limitations and Adjustments Provision to share in the commission.  There is no other contractual basis for them to receive a portion of the commission earned by Ms. Nelson.

15.  Because Ms. Nelson was not paid a substantial portion of the commission to which she was entitled, and was not given a clear, valid or timely

explanation of the decision not to pay her in accordance with the Sales Incentive Plan, she was compelled to resign and seek other employment.

16. As a result of her resignation, Ms. Nelson was not paid commissions on future billings under the contract she had negotiated with DHS. Had she remained employed, she would have been entitled to commissions on those billings.

## Count I
## Breach of Contract

17. Ms. Nelson incorporates by reference the allegations of paragraphs 1 to 16.

18. iMapData breached the Sales Incentive Plan by failing to pay Ms. Nelson the commissions due and to become due from the contract with DHS.

19. iMapData's breach of the Sales Incentive Plan caused injury to Ms. Nelson.

## Count II
## Fraud

20. Ms. Nelson incorporates by reference the allegations of paragraphs 1 to 16.

21. The representation made to Ms. Nelson that the Limitations and Adjustments Provision did not apply to any of the deals she had in the pipeline was a material representation.

22. Ms. Nelson relied on the representation that the Limitations and Adjustments Provision did not apply to any of the deals she had in the pipeline by agreeing to the Sales Incentive Plan.

23. Ms. Nelson's reliance was reasonable.

24. The representation made by Mr. Webster was false, and known to be false when made.

25. iMapData's fraud caused injury to Ms. Nelson.

### Count III
### Negligent Misrepresentation

26. Ms. Nelson incorporates by reference the allegations of paragraphs 1 to 16.

27. The representation made to Ms. Nelson that the Limitations and Adjustments Provision did not apply to any of the deals she had in the pipeline was a material representation.

28. Ms. Nelson relied on the representation that the Limitations and Adjustments Provision did not apply to any of the deals she had in the pipeline by agreeing to the Sales Incentive Plan.

29. Ms. Nelson's reliance was reasonable.

30. The representation made by Mr. Webster was false, and Mr. Webster failed to exercise reasonable care or competence in ascertaining the truth of the representation.

31. iMapData's misrepresentation caused injury to Ms. Nelson.

## Count IV
## Unjust Enrichment

32. Ms. Nelson incorporates by reference the allegations of paragraphs 1 to 16.

33. The conduct alleged herein unjustly enriched iMapData by allowing it to retain or use funds that should rightfully have been paid to Ms. Nelson as commissions.

## Count V
## Breach of contract

34. Ms. Nelson incorporates by reference the allegations of paragraphs 1 to 16.

35. iMapData was contractually obligated to reimburse Ms. Nelson's expenses incurred in selling and attempting to sell iMapData's services.

36. On information and belief, iMapData has not reimbursed all of Ms. Nelson's expenses.

WHEREFORE, Ms. Nelson seeks:

1. Compensatory damages in an amount to be proven at trial;

2. Punitive damages;

3. Costs of the action, including reasonable attorney's fees, pursuant to D.C. Code §32-1308;

4. Liquidated damages pursuant to D.C. Code §32-1303(d);

5. An accounting of all commissions and expense reimbursements due to her; and

6. Such other and further relief as this Court deems just.

    /s/ David U. Fierst_____
David U. Fierst (#912899)
Stein, Mitchell & Mezines LLP.
1100 Connecticut Ave.
Suite 1100
Washington D.C. 20036
dfierst@steinmitchell.com
Tel: (202) 737-7777
Fax: (202) 296-8312